## THE LUZERNE.

### THE FLUSHING.

(Circuit Court of Appeals, Second Circuit. April 14, 1913.)

#### No. 169.

COLLISION (§ 95*)—TUGS WITH TOWS—FAULT.

> Under uncontradicted evidence that such is the practice, a tug passing through Hell Gate into East River with two tows tandem on an ebb tide, which prevented her from stopping or slowing, *held* entitled to make her turn down East River, while it was the duty of another tug coming down Harlem River with tows alongside to hold back and keep out of the way; and the latter vessel *held* solely in fault for a collision between two of the tows.
>
> [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*
>
> Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

This cause comes here upon appeal from a final decree of the District Court, Southern District of New York, holding the Luzerne solely in fault for a collision as a result of which the boat John J. Lubey, while in tow of the Flushing, was damaged.

Harrington, Bigham & Englar, of New York City (H. S. Harrington, of New York City, of counsel), for appellant.

James J. Macklin, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The Flushing with two scows in tow, tandem on a hawser, was proceeding with the ebb tide through Hell Gate to New York. Because of dredges anchored east of Mill Rock, her course was between Mill Rock and Ward's Island and then through the channel to the westward of Mill Rock. Before she turned she saw the Luzerne with two car floats alongside coming down the Harlem River and about opposite 102d street. The tide in the Harlem

River was running about a mile and a half, while in the East River around Mill Rock it was running about four miles. The Flushing on sighting the Luzerne blew two whistles, which the Luzerne answered with two. The Flushing made her turn to port, keeping in mid-channel, and the Luzerne's port car float collided with the rear scow about off Ninety-Eighth street.

The appeal of the Luzerne is predicated on the contention that the navigation of the vessels should have conformed to the starboard hand rule. We do not think this rule applied. Although when the signals of two whistles were exchanged the tugs were on courses which, if protracted, would cross, each knew that there was no intention to cross, but both were going down the East River. It was impossible for the Flushing to stop or slow; if she had done so, she could not control her tandem tow, in the swift tide that ran through the Gate. On the other hand, the slower tide in the Harlem River would present little difficulty to the Luzerne in stopping. There is uncontradicted evidence that with an ebb tide it is the practice, in Gate navigation, when vessels come in sight of each other as these did, for the one in the Harlem River to hold back and let the one in the Gate make her turn into the East River. We think the case was one of special circumstances under article 27 of the Inland Rules, and that the exchange of two-whistle signals imported an agreement that the Flushing, instead of trying to hold back for the Luzerne, should proceed to make her turn to port, and that the Luzerne should not embarrass her in executing that manœuver, even if she had to check her own speed to allow of its execution. This she failed to do in time and was rightly held in fault.

It may be that the Flushing might have gone closer to Mill Rock, but the fault of the Luzerne is so plain that we are not disposed to put any liability on the Flushing.

Decree affirmed, with interest and costs.